UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| CORY HOCH, | Case No. 1:10-cv-02258 AWI DLB PC |
|---|---|
| Plaintiff, | **FINDINGS AND RECOMMENDATIONS RECOMMENDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BE GRANTED** |
| v. | |
| STEPHEN MAYBERG, et al., | (ECF No. 84) |
| Defendants. | TWENTY-ONE DAY DEADLINE |

I. **Background**

Plaintiff Cory Hoch ("Plaintiff") is a civil detainee proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on December 6, 2010. This action is proceeding on Plaintiff's First Amended Complaint ("FAC"), filed May 1, 2012, against Defendant Sanzberro for violation of the Fourth Amendment. (ECF No. 31.) Pending before the Court is Defendant's Motion for Summary Judgment, filed June 19, 2015.[1] (ECF No. 84.) Plaintiff filed an Opposition on September 11, 2015. (ECF No. 85.) The matter is submitted pursuant to Local Rule 230(*l*). For the reasons set forth below, the Court recommends that Defendant's motion be granted in part and denied in part.

II. **Legal Standard**

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled

---

[1] Defendants' Motion for Summary Judgment was served with a concurrent notice pursuant to Wyatt v. Terhune, 315 F.3d 1108 (9th Cir. 2003), as required by Woods v. Carey, 684 F.3d 934, 936 (9th Cir. 2012).

1

to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mutual Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified School Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo County, Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

Defendants do not bear the burden of proof at trial and in moving for summary judgment, they need only prove an absence of evidence to support Plaintiff's case. In re Oracle Corp. Securities Litigation, 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548 (1986)). If Defendants meet their initial burden, the burden then shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). This requires Plaintiff to "show more than the mere existence of a scintilla of evidence." Id. (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505 (1986)).

However, in judging the evidence at the summary judgment stage, the Court may not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted), *cert. denied*, 132 S.Ct. 1566 (2012). The Court determines only whether there is a genuine issue for trial and in doing so, it must liberally construe Plaintiff's filings because he is a pro se prisoner. Thomas v. Ponder, 611 F.3d 1144, 1150 (9th Cir. 2010) (quotation marks and citations omitted).

2

### III. Summary of Complaint

Plaintiff is detained at Coalinga State Hospital ("CSH") in Coalinga, California, where the events giving rise to this action occurred. Plaintiff names as Defendant: senior psychiatric technician John Sanzberro.

Plaintiff is a civil detainee. (ECF No. 31 at 2.) Plaintiff has a hospital room. (ECF No. 31 at 2.) On March 18, 2008, officers Tarkenton and Christian entered his hospital room and searched his living area and locker. (ECF No. 31 at 2.) Plaintiff did not consent to the search. (ECF No. 31 at 2.) There was no warrant. (ECF No. 31 at 2.) Plaintiff contends that he has an expectation of privacy in his hospital room. (ECF No. 31 at 3.) Senior psychiatric technician John Sanzberro gave the officers the opportunity to search when he declared that he believed Plaintiff had other contraband in his property. (ECF No. 31 at 3.) Plaintiff's property was seized, which included his laptop and PlayStation Portable, a gaming device. (ECF No. 31 at 11.) Plaintiff contends a violation of the Fourth Amendment. Plaintiff requests as relief: declaratory relief, the return of his property, punitive damages, reimbursement for any property destroyed, costs of suit, and a mandate that the DMH cease taking all property without a criminal warrant or pending legal proceeding, that DMH implement all rules and regulations in accordance with state law and the Administrative Procedures Act, and all employees to cease enforcement of all policy or procedure not in conformance with the Administrative Procedures Act.

### IV. Undisputed Facts[2]

1. At all times relevant to this action, Plaintiff was a civil detainee, housed in a dorm room at DSH-Coalinga. (ECF No. 1, at 4; Navarro Decl. ¶ 3.)

---

[2] Plaintiff did not file his own separate statement of disputed facts. Local Rule 260(b). In his opposition, however, Plaintiff denied certain facts set forth by Defendant as undisputed. Local Rule 260(b). Therefore, Defendant's statement of undisputed facts is accepted except where brought into dispute by Plaintiff's opposition and verified complaint. Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Johnson v. Meltzer, 134 F.3d 1393, 1399-1400 (9th Cir. 1998).

3

2.      At the time of admission and orientation to DSH-Coalinga each patient is instructed as to the room search policy, including which items are considered "contraband" to be confiscated by CSH staff.  (Sanzberro Decl. ¶ 4; Navarro Decl. ¶ 4.)

3.      Examples of contraband items include patient-restricted administrative directives, homemade alcohol (pruno), drugs, makeshift weapons, child pornography, tobacco.[3]  (Sanzberro Decl. ¶ 5; Navarro Decl. ¶ 4.)

4.      When items are confiscated, patients are given a receipt for the confiscated contraband property.  (Sanzberro Decl. ¶ 6; Navarro Decl. ¶ 5.)

5.      Under DSH policy, room searches for contraband items at CSH may be conducted on a purely random basis or on a 'for cause' basis.  (Sanzberro Decl. ¶ 7; Navarro Decl. ¶ 6.)

6.      On a random basis, the contraband search occurs without warning; if a patient were to be warned as to an upcoming search they could avoid confiscation by having another patient hold their contraband property.  (Sanzberro Decl. ¶ 7.)

7.      Additionally, one patient per week is randomly drawn for a unit search. (Sanzberro Decl. ¶ 6; Navarro Decl. ¶ 6.)

8.      In the event that there is cause to believe the patient is in possession of contraband a search 'for cause' will be conducted, regardless of whether the patient was already randomly searched that week. (Sanzberro Decl. ¶ 6; Navarro Decl. ¶ 6.)

9.      No part of the patients' living area is off-limits for staff-conducted contraband searches; this includes their bed, the area below the bed, and their lockers.  (Sanzberro Decl. ¶ 6; Navarro Decl. ¶ 6.)

---

[3] Plaintiff states he was not advised that patient-restricted administrative directives are considered contraband. Plaintiff contends that there was never any indication in policy or on some contraband list that patient-restricted policies are considered contraband, until recently.  As will be discussed, this dispute is not material to the decision.

4

10. A DSH employee observed, and Plaintiff admitted to, printing out 'patient restricted' Administrative Directives on or about March 17, 2008, in DSH-Coalinga. (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 36:14-38:1; Diaz Decl. ¶¶ 6-8; Rodriguez Decl. ¶¶ 4-6, 8.)

11. The documents were emblazoned 'patient restricted' on the top of every page. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 36:14-38:1; Diaz Decl. ¶ 7.)

12. While a DSH employee, Gabriel Diaz, stated the patient-restricted documents were printed from Plaintiff's personal laptop computer, Plaintiff stated the documents were printed from a disk that was inserted into a DSH-Coalinga computer. (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 36:14-37:8; Diaz Decl. ¶ 6.)

13. Plaintiff stated that the patient-restricted documents – Administrative Directive 820 - were provided by his attorney and properly possessed by a DSH-Coalinga patient. (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 38:9-39:10; Diaz Decl. ¶¶ 9, 10.)

14. However, he told a DSH police officer that the patient-restricted documents were obtained from another patient, and disks containing the information existed among the patient population. (Def.'s Mot. Summ. J. Ex. 1; Rodriguez Decl. ¶ 10.)

15. Because the patient-restricted administrative directive printed out by Plaintiff constituted contraband, it was confiscated by DSH staff. (Def.'s Mot. Summ. J. Exs. 1, 2, 3; Pl.'s Dep. 39:14-23; Diaz Decl. ¶ 11; Rodriguez Decl. ¶ 9.)

16. DSH employee Diaz submitted the seized administrative directive to Unit Supervisor Sanzberro, and informed him that Plaintiff had printed out the administrative directive from his computer. (Def.'s Mot. Summ. J. Ex. 2; Sanzberro Decl. ¶ 12; Diaz Decl. ¶ 11; Rodriguez Decl. ¶ 9.)

17. Based on Plaintiff's undisputed possession of patient-restricted Administrative Directives in electronic formats, Defendant had reasonable cause to direct the search and seizure of

Plaintiff's lap top computer from Plaintiff's living area. (Def.'s Mot. Summ. J. Ex. 1; Sanzberro Decl. ¶¶ 3-9, 12, 17.)[4]

18.   Psychiatric Technician Chavez, Officer Skaggs, Officer Tarkington, and Officer Navarro made contact with Plaintiff outside the unit one dayroom, and told Plaintiff that they had reason to believe his personal laptop contained patient-restricted administrative directives, and so would be confiscated. (Def.'s Mot. Summ. J. Ex. 1; Sanzberro Decl. ¶ 13; Navarro Decl. ¶¶ 10, 11.)

19.   Plaintiff refused to give the laptop, which he had on his wheelchair, to the officers. (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 24:9-25:15, 43:19-25; Sanzberro Decl. ¶¶ 14, 15; Navarro Decl. ¶ 11.)

20.   Defendant spoke to Plaintiff in an interview room, and advised Plaintiff that the patient-restricted contraband on his computer indicated Plaintiff might have contraband in his room or on his person. (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 25:16-24; Navarro Decl. ¶ 12.)

21.   Plaintiff initially insisted upon a search warrant for seizure of the computer, but then stated, "You know what, here. Just take it. You guys are going to eventually get it anyway, so might as well just hand it over." (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 44:1-13; Sanzberro Decl. ¶ 15.)

22.   Plaintiff now agrees that Defendant had reasonable cause to believe that contraband may have been present on his computer, given Plaintiff's printing of the patient-restricted administrative directive. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 28:7-11.)

23.   Plaintiff then gave his laptop to Officer Skaggs. (Def.'s Mot. Summ. J. Ex. 1; Sanzberro Decl. ¶ 13; Navarro Decl. ¶ 12.)

---

[4] Plaintiff disputes that Defendant had reasonable cause to direct the search because he was not advised that the patient-restricted Administrate Directives were contraband. As will be discussed, Plaintiff's argument does not affect the decision in this case. It is undisputed that the administrative directives were emblazoned with the words "Patient Restricted" across the top of each page. Further, it is undisputed that Defendant ordered the search based on his belief that the patient-restricted documents were considered contraband.

24. Plaintiff also told Defendant and others that a computer disk containing the patient-restricted administrative directives was located in his bed area. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 40:10-41:11; Sanzberro Decl. ¶ 16.)

25. Plaintiff's Playstation device may be used to view pornography contained on chip containing child pornography was seized and constituted contraband. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 29:12-30:2.)

26. After Plaintiff provided the laptop, a search for cause was conducted of Plaintiff's bed area and locker area. (Def.'s Mot. Summ. J. Ex. 1; Sanzberro Decl. ¶¶ 15-19.)

27. Two memory cards and 18 compact disks were found in Plaintiff's locker. (Def.'s Mot. Summ. J. Ex. 1.)

28. Plaintiff testified that he had a "neutral" relationship with Defendant. (Def.'s Mot. Summ. J. Ex. 1; Pl.'s Dep. 42:6-11.)

29. Defendant stated he did not act in an arbitrary or retaliatory fashion. (Sanzberro Decl. ¶ 20.)

30. Plaintiff's Fourth Amendment claim accrued on or about March 18, 2008, or March 19, 2008, when his property was seized. (ECF No. 31, at p. 5; Def.'s Mot. Summ. J. Ex. 1.)

31. The two-year limitations period under Code of Civil Procedure section 335.1 applies to this action. (Cal. Civ. Proc. Code § 335.1.)

32. Plaintiff was a civil detainee, not a prisoner, at the time of these events. (ECF No. 1, at 1.)

33. On or about June 30, 2008, Plaintiff's parole was revoked on the basis of his crime of possessing the child pornography discovered in the subject search. (ECF No. 31, at pp. 23, 41; Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 33:11-34:15.)

34.   He served ten months in state prison for the parole revocation, and then returned to the Department of State Hospitals for care.  (ECF No. 31, at pp. 23, 41.)

35.   Plaintiff understood that he did not have to pursue an administrative claim, pursuant to the Ninth Circuit decision of Paige v. Torrey, 201 F.3d 1136, 1137, 1139 (9th Cir. 2000) (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 53:9-18.)

36.   Plaintiff decided to try the administrative claim process before filing this action. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 53:23-54:7.)

37.   Plaintiff filed a lost property reimbursement claim (08-09-2218) with DSH in June 2008, seeking return and/or reimbursement for the seized computer, and was told the confiscated property that contained criminal matter would be held for criminal prosecution.  (ECF No. 31, at pp. 34-35.)

38.   Plaintiff filed a second administrative claim (09-11-2873) on October 12, 2009 for the return and/or reimbursement for the computer and other seized property.  (ECF No. 31, at pp. 22, 35.)

39.   On January 11, 2010, DSH-Coalinga informed Plaintiff that the property would be held pending review for felony offenses, even with completion of his term for parole revocation. (ECF No. 31, at pp. 23, 37.)

40.   Plaintiff filed a third administrative claim for return of the computer and other property on February 8, 2010.  (ECF No. 31, at pp. 25, 34, 37; Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 49:12-50:1.)

41.   On February 18, 2010, DSH-Coalinga issued a denial of Plaintiff's administrative appeal on the basis of pending review for criminal prosecution. (ECF No. 31, at pp. 25, 37.)

42.   "Several months" before the denial of his administrative claim, Plaintiff considered filing an action in federal court. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 54:8-14.)

8

43. Plaintiff filed a state government claim for the $1,065 value of the computer on February 1, 2010. (Def.'s Mot. Summ. J. Ex. 4.)

44. This action was filed on December 6, 2010, two years and eight months after the subject event. (ECF No. 1; ECF No. 30, at p. 5.)

46. Plaintiff's seized computer and associated electronic storage devices were examined for contraband. The computer was found to contain four pornographic videos, with one showing a male under the age of 21 engaged in a sexual activity. Other child pornography was apparently found on a computer disk believed to contain administrative directives. (Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 29:4-7, 41:17-22.)

48. Plaintiff seeks return or reimbursement of the seized property (the computer). (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 17:22-18:6, 30:8-31:12, 45:19-46:12, 50:8-51:19.)

49. Plaintiff makes no claim for his seized Playstation, which was returned, or his CDs, of which 17 of the 18 have been returned. (Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 30:8-31:12, 45:19-46:12.)

50. Plaintiff's computer was held as evidence for review by the Internet Crimes Against Children Task Force in Fresno. (ECF No. 31, at p. 36.)

51. DSH received and responded to the November 16, 2010, order of the Los Angeles Superior Court order transferring the computer from DSH-Coalinga Police Services to the Los Angeles County District Attorney, "until its use in the above sexually violent predator petition is completed." (ECF No. 31, at pp. 26-33, 40; Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 31:24-32:6.)

52. On November 16, 2010, the Los Angeles Superior Court issued a warrant authorizing the search of Plaintiff's computer based upon the declaration of a peace officer stating his belief that Plaintiff violated Penal Code section 311.1 by using his computer to store illicit images of child pornography. (ECF No. 31, at pp. 26-32; Def.'s Mot. Summ. J. Ex. 1.)

53. Plaintiff's laptop computer is not in the custody of Defendant Sanzberro. (ECF No. 31, at p. 29; Def.'s Mot. Summ. J. Exs. 1, 3; Pl.'s Dep. 31:13-32:6.)

54. Plaintiff's parole was revoked on the basis of his crime of possessing this child pornography. (ECF No. 31, at pp. 23, 41; Def.'s Mot. Summ. J. Ex. 3; Pl.'s Dep. 33:11-34:15.)

## V.  Discussion

### A.  Fourth Amendment Search and Seizure

#### 1.  Legal Standard

The Supreme Court has held that civilly detained persons "are entitled to more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish." Youngberg v. Romeo, 457 U.S. 307, 322 (1982). In reliance on Youngberg, the Ninth Circuit has held that court decisions that define the constitutional rights of prisoners can be relied upon to establish a floor for the constitutional rights of those who are civilly detained as sexually violent predators ("SVP"). Padilla v. Yoo, 678 F.3d 748, 459 (9th Cir. 2012); Hydrick v. Hunter, 500 F.3d 978, 989 n.7 (9th Cir. 2007). Accordingly, "the conditions of confinement for SVPs cannot be more harsh than those under which prisoners are detained." Hydrick, 500 F.3d at 989 n.7. Because the Fourth Amendment right to be secure against unreasonable searches and seizures applies to incarcerated prisoners, the same Fourth Amendment right applies to civilly detained SVPs. Hydrick, 500 F.3d at 993 (citing Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997)). However, the reasonableness of the search involving a civilly detained SVP is determined by reference to the detention context. Hydrick, 500 F.3d at 993. "SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." Hydrick, 500 F.3d at 990. Civilly detained SVPs have a diminished right to privacy. Cf. Bell v. Wolfish, 441 U.S. 520, 557 (1979); Hydrick, 500 F.3d at 990.  The government's legitimate interests in conducting a search of a civilly detained SVP or his room mirrors those that arise in the

prison context, such as the safety and security of guards and others in the facility, order within the facility, and the efficiency of the facility's operations. Hydrick, 500 F.3d at 993; see Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004). A search will violate a civilly detained SVP's Fourth Amendment rights if it is "arbitrary, retaliatory, or clearly exceeds the legitimate purpose of detention." Meyers v. Pope, 303 F. App'x 513, 516 (9th Cir. 2008); Hydrick, 500 F.3d at 993.

2. Discussion

It is undisputed that Plaintiff was found to be in possession of administrative directives that were emblazoned with the words "patient-restricted" across the top of each page. Defendant has submitted evidence that the documents were contraband and that he believed the documents were contraband. Plaintiff contends that he was never advised that the items were considered contraband prior to his possession of them, and he contends that the items were not on any contraband list. Nevertheless, Defendant has submitted evidence that the documents were indeed contraband, and that items can be considered contraband even if they are identified on any regulation or list. Moreover, it is not relevant whether Plaintiff believed the items were permissible or not. Even if the Court were to grant that Plaintiff possessed an expectation of privacy in his room, the question is whether the search was arbitrary, retaliatory, or clearly exceeded the legitimate purpose of detention. Here, Defendant has met his burden of showing that the search was ordered on the reasonable belief that Plaintiff possessed contraband in his room. Plaintiff was seen and admitted to being in possession of documents that bore the words "patient restricted" across the top of each page. In his deposition, Plaintiff admitted that Defendant had reasonable cause to believe contraband may have been present on his computer given the fact that Plaintiff printed out the patient-restricted directive utilizing his laptop. (Pl.'s Dep. 28:7-11.) Further, Plaintiff told Defendant and others that a computer disk containing the directives was located in his bed area. Plaintiff also stated that he had a neutral relationship with Defendant. Therefore, Defendant has met his burden of demonstrating

11

that the undisputed facts show Defendant did not conduct the search arbitrarily, out of retaliation, or clearly beyond the legitimate penological purposes of safety and security of the institution.

The burden thus shifts to Plaintiff "to designate specific facts demonstrating the existence of genuine issues for trial." In re Oracle Corp., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 323). Here, aside from his own allegation that he believes the directives were not contraband and that the directives did not appear on a contraband list at that time, Plaintiff submits no facts demonstrating that the search was arbitrary, retaliatory, or beyond the scope of a legitimate search. As previously discussed, Plaintiff's belief in what was considered contraband is not relevant to whether Defendant conducted a reasonable search. Therefore, Defendant's motion for summary judgment should be granted.

**B.     Limitations Period**

   1.     Legal Standard

Defendant argues that Plaintiff's claims are time-barred. Plaintiff contends that this issue was already addressed in the Court's order of May 15, 2014. Plaintiff is correct that the issue was raised by Defendant and addressed, but it was raised in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court noted that the motion could only be granted if the running of the statute was apparent on the face of the complaint. Because Plaintiff's amended complaint was accompanied by evidence of his pursuit of administrative remedies, and at that stage in the proceedings it was not clear whether Plaintiff was entitled to equitable tolling, the motion was denied. Defendant has now raised the issue in the context of a motion for summary judgment. In this context, the Court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).

Federal law determines when a claim accrues, and "[u]nder federal law, a claim accrues

when the plaintiff knows or should know of the injury that is the basis of the cause of action." Douglas v. Noelle, 567 F.3d 1103, 1109 (9th Cir. 2009) (citation omitted); Maldonado v. Harris, 370 F.3d 945, 955 (9th Cir. 2004); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). Because section 1983 contains no specific statute of limitations, federal courts should apply the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004); Maldonado, 370 F.3d at 954; Fink, 192 F.3d at 914. California's statute of limitations for personal injury actions was extended to two years effective January 1, 2003. Cal. Civ. Proc. Code§ 335.1; Jones, 393 F.3d at 927; Maldonado, 370 F.3d at 954-55.

In actions where the federal court borrows the state statute of limitations, courts should also borrow all applicable provisions for tolling the limitations period found in state law. Jones, 393 F.3d at 927. Under California law, prisoners who at the time the cause of action accrued were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal conviction benefit from a two-year tolling provision for damages actions. Cal. Civ. Proc. Code § 352.1.

In addition, California's equitable tolling doctrine "applies when an injured person has several legal remedies and, reasonably and in good faith, pursues one." McDonald v. Antelope Valley Community College Dist., 45 Cal.4th 88, 100 (Cal. 2008) (citation and internal quotation marks omitted). The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations - timely notice to the defendant of the plaintiff's claims - has been satisfied, McDonald, 45 Cal.4th at 99 (quotation marks and citations omitted), and pursuit of administrative remedies equitably tolls the statute of limitations so long as there was timely notice, lack of prejudice to the defendant, and reasonable, good faith conduct on the part of the plaintiff. Id. at 101-03.

2. <u>Discussion</u>

Plaintiff's Fourth Amendment claim accrued on March 18 or 19, 2008, when his property was seized. This action was filed two years and eight months later, on December 6, 2010, for the search of his room and confiscation of his locker. (Pl's Original Compl.; ECF No. 1.) Plaintiff failed to file this action prior to the two year statute of limitations period. Cal. Civ. Proc. Code § 335.1; <u>Jones</u>, 393 F.3d at 927; <u>Maldonado</u>, 370 F.3d at 954-55. Thus, the issue here is whether the statute of limitations was effectively tolled.

Defendant argues that because Plaintiff is not a prisoner, the tolling provisions do not apply to him. <u>Page v. Torrey</u>, 201 F.3d 1136, 1137, 1139 (9th Cir. 2000). However, California courts have rejected the assertion that equitable tolling should be limited to cases in which a plaintiff was required to pursue a particular alternate remedy before initiating suit and instead espoused 'the principle that regardless of whether the exhaustion of one remedy is a prerequisite to the pursuit of another, if the defendant is not prejudiced thereby, the running of the limitations period is tolled.'" <u>McDonald</u>, 45 Cal.4th at 101-102 (quoting <u>Elkins v. Derby</u>, 12 Cal.3d 410, 414, 115 (Cal. 1974)).

Defendant further argues that Plaintiff's use of the administrative grievance process should not toll the limitations period. Defendant states Plaintiff pursued his administrative claims with the understanding that the PLRA exhaustion requirements did not apply to him. Defendant further contends that Plaintiff persisted in repetitive administrative claims in 2008, 2009, and 2010, and did not file in federal court until December 2010, despite considering filing in federal court several months prior.

Plaintiff argues that he was unaware of the limitations period, and notwithstanding, he did not pursue his claims in federal court because he was making a good faith effort to resolve his claims administratively and in the state process.

Based on the evidence, there is a general issue of fact whether Plaintiff is entitled to equitable

14

tolling. Therefore, Defendant's motion for summary judgment based on violation of the limitations period should be denied.

## C. **Qualified Immunity**

### 1. Legal Standard

Defendant argues that he is immune from suit because he did not violate a constitutional right, and even if he did, the constitutional right was not clearly established at the time.

Qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). Qualified immunity shields government officials from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727 (1982). "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808 (2009), and it protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092 (1986).

In resolving the claim of qualified immunity, the Court must determine whether, taken in the light most favorable to Plaintiff, Defendants' conduct violated a constitutional right, and if so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151 (2001); Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has discretion to address the two-step inquiry in the order it deems most suitable under the circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry must be conducted in that order, and the second step is reached only if the court first finds a

constitutional violation); Mueller, 576 F.3d at 993-94.

2. Discussion

In this case, the Court has determined that no constitutional violation occurred. Therefore, Plaintiff cannot establish the first prong of the test set forth in Saucier, and Defendant is entitled to qualified immunity.

In addition, as the Court had previously noted, the "contours of an involuntarily confined civil detainee's right to privacy in his room in a secure treatment facility are unclear." (ECF No. 62 at 7.) Indeed, some courts have "concluded that no Fourth Amendment claim lies because civil detainees do not have a reasonable expectation of privacy in their rooms." Griego v. Allenby, No. 1:11-cv-01676, 2012 WL 4670803 at *3 (citing Rainwater v. Bell, No. 2:10–cv–1727 GGH P, 2012 WL 3276966, at *11 (E.D. Cal. Aug. 9, 2012) (civil detainee did not have a reasonable expectation of privacy in his jail cell)); Pyron v. Ludeman, Nos. 10-3759 (PJS/JJG), 10-4236 (PJS/JJG), 2011 WL 3293523 at * 6 (D. Minn. June 6, 2011) (search of a civil detainee's personal items in his cell did not violate the Fourth Amendment), *report and recommendation adopted in full*, 2012 WL 1597305 (D. Minn. Jul. 29, 2011); Banda v. Corzine, No. 07-4508 (WJM), 2007 WL 3243917, at * 7-8 (D.N.J. Nov. 1, 2007) (civil detainee unable to state Fourth Amendment claim as his expectation of privacy yielded to legitimate governmental interest in keeping facility free of controlled substances); Riley v. Doyle, No. 06-C-574-C, 2006 WL 294743, at *5 (W.D. Wis. Oct. 16, 2006) (civil detainee cannot state Fourth Amendment claim for repeated contraband searches of cell); compare Stearns v. Stoddard, No. C11-5422-BHS-JRC, 2012 WL 1596965, at * 3 (W.D. Wash. Apr. 11, 2012.) (open question whether civil detainee housed in a secure facility has any expectation of privacy in his cell), *report and recommendation adopted in full*, 2012 WL 1597305 (W.D. Wash. May 7, 2012.). Since the state of the law is unclear, Defendant is entitled to qualified immunity. Harlow, 457 U.S. at 818.

**VI.     Conclusion and Recommendation**

For the reasons set forth above, the Court HEREBY RECOMMENDS that Defendant's motion for summary judgment, filed on June 19, 2015, be: 1) GRANTED on the ground that Defendant's ordered search of Plaintiff's room did not violate Plaintiff's Fourth Amendment rights; 2) GRANTED on the ground that Defendant is entitled to qualified immunity, and 3) DENIED on the ground that Plaintiff's federal action violates the statute of limitations.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **twenty-one (21) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court.  Local Rule 304(b).  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections must be filed within **ten (10) days** from the date of service of the objections.  Local Rule 304(d).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 28, 2015**                    /s/ Dennis L. Beck
                                                                UNITED STATES MAGISTRATE JUDGE

17